**Carolyn GLENN, Plaintiff,**

v.

**UNITED STATES of America and Philip Udall, Defendants.**

**Civ. A. No. 11164.**

United States District Court
E. D. New York.

Jan. 10, 1956.

Sidney M. Zimmerman, New York City, J. Jerome Olitt, New York City, of counsel, for plaintiff.

Leonard P. Moore, U. S. Atty., Brooklyn, N. Y., Elliott Kahaner, Asst. U. S. Atty., Brooklyn, N. Y., of counsel, for defendant United States.

GALSTON, District Judge.

This is a personal injury action instituted pursuant to Federal Tort Claims Act of August 2, 1946, 28 U.S.C.A. §§ 921, 946.[1]

It is alleged that at the time of the accident the plaintiff was a passenger in an automobile owned and operated by the defendant Philip Udall.

The Udall vehicle was traveling north on Route 17, approaching Savannah, Georgia. An Army bus was being operated, managed and controlled by the defendant, United States of America, and was traveling in the opposite direction. Negligence is charged against both defendants. However, when the action was called for trial on December 5, 1955, counsel declared that the defendant Udall had paid the plaintiff the sum of $10,000 in settlement of the cause of action against him; so the trial proceeded against the remaining defendant, United States of America.

The injuries which the plaintiff sustained arose out of the collision between the Udall car and the Army bus. On the issue of negligence the witnesses for the plaintiff were herself, Udall and Maki, whose testimony was taken by the plaintiff by deposition. The Government witnesses were the driver of the bus, Maki; Captain Bierly, an Army official riding in a car driven by Sgt. Boyer which was following the bus driven by Maki; Boyer, Sgt. Frank Whitney, a passenger in the Army bus, and police officer Witherington, whose testimony was taken by deposition.

It is not easy to reconcile the different versions. Udall described the accident as happening after he had been forced off the northbound lane by a vehicle traveling in the opposite direction, as a result of which he had to drive on the soft shoulder of the road to the right of the northerly lane. The shoulder was perhaps two or three inches below the level of the road. In endeavoring to get back on the road from the shoulder, he proceeded in such a way as to head towards the rear left side of the Army bus. Udall said that the bus was coming towards him and that it was in the center of the road and over the white line dividing the lanes. Asked approximately how many inches or feet the Army vehicle was over that line, he answered:

"I can't say that; I didn't measure it; it was about a foot or two over the white line, the center line."

It must be observed that if the Army bus was but a foot or two over the white line it is hard to believe his statement that

"As far as I could see, the bus was traveling in the center of the road."

He said he continued to proceed in a "straight" direction, though he could not

---

1. 1948 Revision, 28 U.S.C.A. §§ 2672, 2680 note.

tell what the distance was from the right side of his car to the right side of the road. Further on he was asked:

"Q. How far was the left side of your car from the white line? A. Well, that I imagine it was about a foot to two feet."

Now it is not easy to reconcile Udall's testimony about the position and speed of his own car with the payment by him of $10,000 in settlement of the plaintiff's claim of negligence against him. If he was free from negligence, as he contended at the trial, why pay the plaintiff $10,000 in settlement of her claim that he was guilty of negligence?

As for Mrs. Glenn, she testified that as they pulled back on the road from the soft shoulder, she was looking at billboards, enjoying the scenery and looking to her right. Her testimony was somewhat along these lines:

"Q. Did you hear anything just before you saw the Army vehicle? A. Do you mean did I hear anyone exclaiming anything?

"Q. Yes. Tell the Court what you heard. A. I heard Mr. Udall say: 'Oh my God!' I looked up quickly. * * * I saw this big bus coming towards me. I guess it was almost on top of us.

"Q. Did you notice whether that bus—what was the position of that bus upon the road? A. It seemed to be coming right towards us.

"Q. Were you in your lane? A. Absolutely."

Here again there was no showing of negligence against Udall.

Later on she testified that she thought there would be a head-on collision. Under cross-examination she admitted that she did not remember much about the impact.

Now as to the evidence adduced by the defendant:

The plaintiff took the deposition of Sgt. Maki, who was the driver of the Army bus. As I read the deposition I did note that he made various estimates as to the distances between the bus and Udall's car, and of the time that elapsed between different distances. But these inconsistent estimates were not sufficient to discredit the witness on the main factors of the occurrence. With respect to the speed of the vehicles and their position relative to the white line dividing the highways, Maki told a perfectly consistent story.

Questioned about the maintenance of the vehicle he said that it was customary for him, before starting on a journey, to check for whatever the bus needed, and that he did daily, including the day of the accident. He checked for gas, oil, water, tires and brakes. He estimated the speed at which he was traveling at about thirty-five miles an hour. As he saw the Udall vehicle he took his foot off the gas pedal.

The following was part of his examination:

"Q. What lane was the Udall vehicle in when you first saw it? A. He was in his own lane.

"Q. Was he in the center of the lane or either part of the lane? A. Well he was coming toward me across the lane.

"Q. How fast was the Udall vehicle coming when you first saw it? A. I could not judge that."

Later on:

"Q. Now, how far did the Udall car continue coming before it reached the center of the road? A. Until he hit the side of my car.

"Q. Was the side of your bus at that time on the side of the road or the middle of the road? A. It was in my lane; I would say it was about 18 inches in my lane."

He said the only damage to the bus was the scraping off of paint for a distance of about four or five feet.

One of the most consistent and best of the witnesses who testified was Captain Bierly. He was the motor officer in charge of convoys at the United States Army Field Band on March 7, 1950. He testified that the Army bus left Savan-

nah about 11:10. Bierly was riding in a sedan and sat in the back seat. He followed the last bus of the convoy. That bus was the Army bus involved in the collision. He said that the accident took place about seven miles south of Savannah; also that the drivers in the convoy had instructions with respect to the speed that they were to travel, the maximum being forty-five miles an hour. The bus in question, so he said, traveled that distance of seven miles in about from twenty minutes to a half hour. The legal limit on that road, between Savannah and Jacksonville, is fifty miles an hour. He didn't see the impact between the two cars, but he said that Sgt. Boyer, who was driving his car, called out as he saw the impact. The Udall car continued after the impact past the Bierly car. At the time of contact the Bierly car was ninety or a hundred yards away.

It would seem reasonable to infer that if the Udall car had passed the Bierly car for a distance of ninety or a hundred yards after the contact with the Army bus, it was traveling much faster than the twenty-five miles an hour which was the estimate given by Udall of the speed of his car prior to the contact with the bus. Captain Bierly said that the Udall car was coming up the road "at a seemingly high rate of speed. There was a piece of chrome flying across the road in front of us. He passed us, and after he passed us he rolled over." He was asked:

"Q. Did you examine the side of the road on the lane on which the private car was traveling after the accident? A. Yes sir.

"Q. Will you tell me the condition of that road-bed? A. That was soft, wet, it had been raining the night before. The road itself, the concrete, was approximately two to three inches above the shoulder. There was a sharp drop-off."

Bierly also said that the Army vehicle had traveled in its own lane and one foot to the right of the white line.

After the accident, Captain Bierly helped Udall out of his car, and he talked with Udall so as to get material for his report of the accident. Udall showed him his driver's license and told Bierly that prior to contact with the Army bus he had been "crowded off the road by a big truck, and that when he came back up on the road he came over and hit the bus.

"I asked him if he thought at any time that our driver was at fault, and he said absolutely not, or words to that effect. He said that the driver was not to blame."

Sgt. Boyer, who was driving for Captain Bierly, testified that from the time he left Savannah until the time of the accident he had maintained approximately the same distance of ninety to a hundred yards behind the Army bus, and that at the time of the accident he was traveling forty miles an hour, and the bus was being driven at the same rate of speed. Boyer immediately before the accident saw Udall's car come off the side of the road with mud spinning in the air, then reach the southbound lane, crossing the white line on the way and striking the bus. He said the bus was in its own lane.

Sgt. Witherington, a police officer of Chatham County, Georgia, was examined by deposition. He did not see the accident, but his duties required him to investigate it. He interviewed Udall, and he was led to conclude that Udall had lost control of his car before coming into contact with the bus.

 On balance, in appraising the testimony that I have reviewed in the foregoing part of this opinion, I am unable to reach the conclusion that the plaintiff has sustained her burden of proof by a fair preponderance of the credible evidence. The law of the forum in this matter is the law of New York, and here the burden of proving by a preponderance of the evidence rests on the plaintiff, Connelly v. Carrig, 244 N. Y. 81, 154 N.E. 829; Kay v. Metropoli-

tan St. Ry. Co., 163 N.Y. 447, 57 N.E. 751.

The Restatement of the Law, Conflict of Laws, 595, states:

"(1) The law of the forum governs the proof in court of a fact alleged.

"(2) The law of the forum governs presumptions and inferences to be drawn from evidence."

Even if the law of Georgia applied in respect to the law governing burden of proof, the plaintiff would derive no comfort therefrom. The pertinent sections of the Georgia code are:

"38-103. Burden of proof.—The burden of proof generally lies upon the party asserting or affirming a fact and to the existence of whose case or defense the proof of such fact is essential. If a negation or negative affirmation be so essential, the proof of such negative lies on the party so affirming it."

"38-106. Preponderance of evidence defined.—By preponderance of evidence is meant that superior weight of evidence upon the issues involved, which, while not enough to wholly free the mind from a reasonable doubt, is yet sufficient to incline a reasonable and impartial mind to one side of the issue, rather than to the other."

"38-107. Determination of where preponderance of evidence lies.—In determining where the preponderance of evidence lies, the jury may consider all the facts and circumstances of the case, the witnesses' manner of testifying, their intelligence, their means and opportunity for knowing the facts to which they testified, the nature of the facts to which they testified, and the probability or improbability of their testimony, their interest or want of interest, and also their personal credibility as far as the same may appear from the trial. The jury may also consider the number of witnesses, though the preponderance is not necessarily with the greater number."

Accordingly the plaintiff's complaint on the record made in this case must be dismissed.

Concurrently with this opinion, appropriate findings of fact and conclusions of law will be filed.